IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LILLIAN POLK, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRANDYWINE HOSPITAL, | : | No. 15-1763 |
|     *Defendant*. | : | |

M E M O R A N D U M   O P I N I O N

PRATTER, J.                                                                                                                                        JUNE 16, 2015

     Lillian Polk brings suit against Brandywine Hospital for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Brandywine Hospital has filed a Motion to Dismiss arguing that Ms. Polk has failed to sufficiently allege her claims. The Court disagrees and will deny the Motion to Dismiss.

**I.    Factual Allegations**[1]

     Ms. Polk began work at Brandywine Hospital as a phlebotomist[2] in June of 2012. Ms. Polk was the only black phlebotomist out of nine phlebotomists employed at Brandywine Hospital. In May 2013, Ms. Polk complained to the human resources department about racial bias and discrimination at Brandywine Hospital, believing that she was being treated unfairly in comparison to her white co-workers. Starting around July 2013, Ms. Polk's supervisors began to target her for "write-ups" for conduct for which her white co-workers were not written up. On August 18, 2013, Ms. Polk again complained to the human resources department about the discrimination and disparate treatment she perceived at Brandywine Hospital. In particular, she

---

[1] The facts recounted here come from Ms. Polk's Complaint and are assumed true for purposes of this analysis.

[2] The Second Edition of the Oxford New American Dictionary defines "phlebotomy" as "the surgical opening or puncture of a vein in order to withdraw blood or introduce a fluid . . . ."

1

complained about the write-ups she was receiving. Around August 23, 2013, Ms. Polk's supervisors announced at a staff meeting that all future complaints would need to first be directed to them, and only if the supervisors failed to resolve the complaint would it be referred to human resources.

On August 30, 2013, Ms. Polk's supervisors wrote up Ms. Polk for three offenses. The first was failing to obtain permission from a nurse before drawing blood. This write-up was later retracted when the nurse informed Ms. Polk's supervisors that she had, in fact, given permission to Ms. Polk to draw the blood. Second, Ms. Polk was written up for leaving a dirty needle and an empty tube in a patient room. This write-up was also false. Third, Ms. Polk was written up for not finding out where a patient was located. However, phlebotomists at Brandywine Hospital had never been expected to track down patients whose locations were unknown. Ms. Polk's white co-workers had engaged in similar conduct to each of these for which Ms. Polk was written up, but her white co-workers had not been written up.

On September 20, 2013, Ms. Polk took medical leave for severe headaches, remaining out of work until September 25, 2013. Ms. Polk was fired on October 3, 2013, ostensibly for having failed to find someone to cover for the weekend days she missed. This reason for her termination, however, was mere pretext. Ms. Polk had never been informed of a policy requiring her to find someone to cover for her, and Ms. Polk had informed multiple technicians at Brandywine Hospital that she would be out from work, as she had been instructed to do. None of the technicians Ms. Polk spoke with had told Ms. Polk she would need to find someone to cover for her, and another phlebotomist covered her shifts without incident. In the past, one of Ms. Polk's white co-workers had failed to appear for work without providing any notice whatsoever.

But that white phlebotomist had not been fired. The real reason behind Ms. Polk's firing was racial discrimination and retaliation for her earlier complaints about racial discrimination.

As a result of the conduct of Brandywine Hospital, Ms. Polk has suffered damages, including lost income, harm to reputation, emotional distress, mental anguish, and pain and suffering.

**II.     Analysis**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

To allege a prima facie case of discrimination based on race in violation of Title VII, a plaintiff must allege that (a) she belongs to a protected class, (b) she was qualified for the position, (c) her employer took an adverse employment action against her, and (d) the adverse action occurred under circumstances that raise an inference of discrimination. *See Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir.2003). An inference of discrimination arises if, for example, similarly situated individuals outside the plaintiff's protected class were treated more favorably than she was. *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 273 (3d Cir. 2010).

Ms. Polk has sufficiently alleged a plausible claim of discrimination based on race. She alleges that, as a black woman, she belongs to a protected class and that she is qualified to be a phlebotomist. She also alleges that she was fired from her job after a summer during which she

complained, more than once, of racial discrimination, and during which she was repeatedly written up for conduct for which her white co-employees were not written up. Finally, she alleges that she was fired for failing to find a person to cover for her shift at work, even though she had never been informed of such a requirement and even though one of her white co-workers had, in the past, failed to show up for work without warning and had not been fired. These allegations set forth sufficient factual allegations to assert a plausible claim for race discrimination.

To allege a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) there was a causal connection between her protected activity and the adverse action. *See Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). To establish a causal connection, a plaintiff usually must eventually prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Otherwise, a plaintiff must show that from the "evidence gleaned from the record as a whole the trier of the fact should infer causation." *Id.* (quotation marks omitted).

Ms. Polk has sufficiently alleged a claim for retaliation. She alleges that she engaged in a protected activity by complaining about racial discrimination in the workplace on more than one occasion. In particular, she first complained of racial discrimination in May 2013. On August 18, 2013, she complained to the human resources department that she was being singly targeted for "write-ups" by her supervisors. No more than a week later, Ms. Polk's supervisors announced a new policy requiring Ms. Polk to complain to them before complaining to the human resources department. On August 30, 2015, Ms. Polk's supervisors wrote her up for three offenses:

4

(1) failing to obtain permission before drawing blood; (2) leaving a dirty needle in an empty tube in a patient's room; and (3) failing to locate a patient whose location was unknown. However, the first two of these offenses were false, and the third was a common practice for which her white co-workers were not written up. About a month later, Ms. Polk was terminated for failing to find someone to cover her shift when she was out on sick leave. One of her white co-workers had, in the past, failed to provide any warning whatsoever before her absence, but she had not been fired.

These allegations are sufficient to state a plausible claim for retaliation. Ms. Polk alleges that her eventual firing followed a pattern of complaints followed by antagonistic activity by her employer. The temporal proximity of her firing to her protected actions, coupled with the alleged pattern of antagonism, allows the Court to conclude that Ms. Polk has plausibly stated a claim for retaliation under Title VII.

The Court will also deny the Motion to Dismiss as to Ms. Polk's alleged damages. Ms. Polk alleges that she was subjected to months of discrimination based on her race, eventually resulting in her losing her employment. These allegations make plausible her claims for damages for lost income, emotional distress, harm to reputation, mental anguish, and pain and suffering. As to punitive damages, punitive damages are recoverable under Title VII when an employer acts "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). At this stage, Ms. Polk has sufficiently met her burden in stating a plausible claim to the relief of punitive damages. She alleges that she complained in writing to the human resources department of

"discrimination and disparate treatment" prior to her firing. Compl. ¶ 9 (quotation marks omitted). She alleges a pattern whereby her complaints of discrimination were met with further discriminatory conduct. At this stage, the Court can reasonably infer that if such allegations are true, Brandywine Hospital was aware that further racial discrimination against Ms. Polk would violate her federal rights, and that Brandywine maliciously or recklessly disregarded Ms. Polk's federal rights in firing her.

### III.     Conclusion

For the reasons set forth above, the Court will deny Brandywine Hospital's Motion to Dismiss. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge